IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ROBERT L. NICHOLS**<br>**6800-1206 Fleetwood Road**<br>**McLean, VA 22101-3620**<br><br>    *Plaintiff,*<br><br>    **v.**<br><br>**LOUIS P. STONE, III,**<br>**JEANNE STONE,**<br>**4555 Williams Wharf Road**<br>**St. Leonard, MD 20685**<br><br>**STONEY'S SEAFOOD HOUSE, INC.**<br>**3938 Oyster House Road**<br>**Broomes Island, MD 20615**<br><br>**SERVE ON:**<br>**Resident Agent Louis P. Stone, III**<br>**4555 Williams Wharf Road**<br>**St. Leonard, MD 20685**<br><br>**and**<br><br>**BROOMES ISLAND YACHT CLUB, INC.**<br><br>**SERVE ON:**<br>**Resident Agent Louis P. Stone, III**<br>**3938 Oyster House Road**<br>**Broomes Island, MD 20615**<br><br>    *Defendants.* | Civil Action No. _____ |

## COMPLAINT

Plaintiff, Robert L. Nichols, individually and derivatively for PAR Limited Partnership,

alleges upon knowledge as to himself and his own acts, and certain acts of others, and otherwise

upon information and belief, as follows:

294386.1

## Introduction

1.    This is a derivative action brought on behalf of the partnership of and holders of limited partnership interests in PAR Limited Partnership ("PAR") against Broomes Island Yacht Club, Inc., General Partner of PAR, Louis P Stone, III, Jeanne Stone and Stoney's Seafood House, Inc.

2.    This action arises under the common law for breach of contract, unjust enrichment, tortious interference with contractual relations, tortious interference with prospective advantage, breach of fiduciary duty, intentional misrepresentation, constructive fraudulent and fraudulent concealment by the Defendants.

3.    Defendants, by the actions complained of herein, injured PAR and the Limited Partners, *inter alia,* by stripping PAR of profits through the payment of excessive expenses, fees and other charges and by failing to enforce lease agreements between PAR and its tenants, diminished the value of PAR assets, wrongly reduced or denied proper distributions to the Limited Partners, and otherwise diverted PAR funds and assets.  Defendants have, for their own interests, intentionally abused the trust which PAR's investors had placed in them by allowing excessive expenses as deductions against rents owed to PAR and other wasting of Partnership assets.

4.    The named Plaintiff represents all Limited Partners in the Partnership who suffered directly from Defendants' actions.

5.    This action seeks equitable relief and damages as remedies for Defendants' breaches of their fiduciary and contractual duties to PAR and those persons holding limited partnership interests therein.

294386.1

### Jurisdiction

6.     Plaintiff is a resident and citizen of the Commonwealth of Virginia and

Defendants are residents and citizens of Maryland.  The parties are citizens of different states,

and the amount in controversy exceeds $75,000, exclusive of interest, legal fees and costs.  Thus,

jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332.

### Venue

7.     Venue lies with this Court because Defendants reside in Calvert County, in the

State of Maryland, and because the actions and conduct underlying Plaintiff's causes of action

occurred in Calvert County Maryland.

### Plaintiff

8.     Plaintiff Robert L. Nichols ("Nichols") is a resident of Virginia and a Limited

Partner in the PAR Limited Partnership (hereinafter "PAR"), a Maryland Limited Partnership.

### Defendants

9.     Defendant Louis P. Stone, III ("Stone") is a Maryland Resident and a PAR

Limited Partner.  Stone is also the President of, and controls Defendant Broomes Island Yacht

Club, Inc., a PAR General Partner.  Stone is also the owner and operator of Defendant Stoney's

Seafood House, Inc. ("Stoney's"), a restaurant and tenant of PAR.  Jeanne Stone is a named

insured on certain PAR insurance parties and has been engaged in the conduct of PAR business.

### Derivative Allegations

10.     Plaintiff brings this action as a derivative action on behalf of, and for the benefit

of PAR and to remedy the wrongdoings alleged herein.

11.     Plaintiff at all times relevant hereto was and remains a Limited Partner of PAR.

12.     Plaintiff will fairly and adequately represent the interest of PAR and its investors,

3

294386.1

in enforcing and prosecuting the rights of PAR, and has retained competent counsel in this regard.

13.     This action is brought to remedy violations of common law as alleged herein on behalf of the Partnership.

14.     This action is not a collusive one to confer jurisdiction on this Court which it would not otherwise have.

15.     Any demand on the General Partner, a corporation controlled by Stone with the sole authority to control the business of PAR, would be futile because the General Partner and Stone are so personally and directly conflicted or committed to the matters in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

### Substantive Factual Allegation

16.     Prior to the creation of PAR, Nichols owned and operated the entire property known as Broomes Island Marina, on Broomes Island, Calvert County, Maryland, which included multiple residential rental units and commercial improvements, including a marina and a restaurant operated by Stone (the "Property").

17.     Nichols and Stone agreed to enter into a limited partnership.

18.     PAR was created by a Contract and a Limited Partnership Agreement (the "Agreement"), both dated November 30, 1995.

19.     There are two Limited Partners of PAR, Nichols and Stone, both of whom have a 49.5% interest in PAR.

20.     The Broomes Island Yacht Club, Inc. ("BIYC") was incorporated in Maryland on November 9, 1995, is sole PAR General Partner, and has a 1% interest in PAR.

4

21.     By virtue as his position as a director of BIYC, Stone, as president with 51 of 100 shares, controls BIYC.  Nichols, as secretary/treasurer has the remaining 49 shares.

22.     The purpose of PAR, as described in the Contract, is to "acquire, develop, and manage the Property."

23.     Nichols conveyed all of his interest in the Property to PAR on December 20, 1995.

24.     Stone paid Nichols $750,000 at the same time that Nichols conveyed the property to PAR.

25.     According to the Contract, the parties contemplated expansion of activities on the Property to include, among other things, an additional restaurant.

26.     According to the Contract, Stone was obligated to supply the capital contribution for the construction of such expansion, and maintenance of existing facilities.

27.     According to the Contract, Stone was permitted to defer the payment of $5,000 per month to PAR for rental on the restaurant for a period of two years in exchange for renovating the Property, and one-half of that amount was considered a capital contribution by Nichols.

28.     In accordance with the Contract, leases existing at the time of the Contract, for boat slips, the restaurant and a number of residential units, were transferred to PAR on November 30, 1995.

29.     These leases were supplemented and amended in January 2001 (hereinafter collectively referred to as the "Lease").

30.     According to the Lease, Stoney's agreed to pay rent of $60,000, for the initial period of January 1, 2001 to October 31, 2001 in monthly installments of $6,000.

294386.1

31.     In addition to $6,000 per month in rent for the restaurant, Stoney's agreed in the Lease to pay to PAR all rental income from the boat slips and residential rental properties.

32.     Stoney's also agreed in the Lease to pay fuel, telephone, electricity, water, sewer, interior and exterior maintenance, painting, caulking, maintenance of plumbing, electric works and fixtures thereof, taxes and permit fees associated with any additions or alterations, and maintenance and clearing of ice, snow and debris from sidewalks and parking lots.

33.     Stoney's also agreed in the Lease to indemnify and hold harmless PAR from all claims and demands of every kind that may be brought against it, for or on account of any damage, loss or injury to person or property in or about the leased premises during the continuance of Stoney's tenancy, including any damage or injury to person or property of Stoney's or anyone else, directly or indirectly caused by dampness or water in any part of the premises or in any part of any other property of PAR or of others, or from any leak or break in any part of the plumbing of the premises.

34.     Stoney's agreed in the Lease to carry and pay for a public liability policy protecting PAR against claims for personal injury and property damage, and to furnish PAR with a certificate of same, naming PAR as an additional insured.

35.     PAR retained in the Lease the sole right to collect any insurance proceeds for damage of any kind to any of the improvements placed upon the premises by Stoney's, and PAR was required to restore any improvements made by Stoney's only to the extent of the insurance proceeds PAR received.

36.     The Lease between Stoney's and PAR is an obligation of and personally guaranteed by Stone.

294386.1

37.     According to Section 10 of the Agreement, the management of PAR business lies solely with the General Partner, Broomes Island Yacht Club, Inc. and the General Partner is obligated to operate the Partnership for the benefit of all of the partners.

38.     Among other things, the General Partner is charged with insuring PAR assets and undertakings against any and all risks.

39.     Section 10.3 of the Agreement provides that all powers of the General Partner may be delegated to any other person, "except the limited partners."

40.     Section 12.1 of the Agreement further clarifies this prohibition by providing that no limited partner "shall take part in the control of the business of the Partnership."

41.     Under the Maryland Revised Uniform Limited Partnership Act, under which PAR was created, the partners of PAR owe a duty of loyalty and a duty of care to each PAR partner and to PAR.

42.     The PAR partners are also obligated to discharge their duties and rights under the Agreement consistent with the obligation of good faith and fair dealing.

43.     In accordance with their duty of loyalty, a PAR partner must account to the partners for any property, profit, or benefit derived by the partner in the conduct of PAR business, or derived from a use by that partner of PAR property, including the appropriation of a PAR opportunity.

44.     A PAR partner is prohibited from dealing with PAR in the conduct of PAR business as or on behalf of a party having an interest adverse to PAR.

45.     A partner's duty of care to PAR and other partners includes refraining from grossly negligent or reckless conduct, intentional misconduct, or knowing violation of law.

7

46.     Beginning shortly after the inception of PAR, and contrary to his statutory, fiduciary and contractual obligations, Stone, improperly acting as the General Partner and/or a Limited Partner of PAR, simultaneously represented PAR and Stoney's, a tenant and party having interest adverse to PAR, in such a way as to willfully, or with gross negligence and recklessness, divert PAR property, profits, benefits and business opportunities from PAR to Stoney's and against the interest of Nichols and PAR, and otherwise acted against the best interest of Nichols and PAR.

47.     Among other things, Stone and BIYC caused Stoney's to deduct from the rent owed to PAR, expenses and other items which were properly attributable to Stoney's business and not chargeable to PAR under the Lease or any other agreement or authority.

48.     Nichols repeatedly requested that Stone, Stoney's and BIYC cease such blatant and willful misconduct, and when such requests failed to stop such misconduct, Nichols was forced to file suit against Stone and Stoney's, which he did on May 16, 2000 in Federal District Court in Maryland.

49.     In the lawsuit, Nichols alleged that Stone had failed to fulfill all of his obligations and perform all of his duties under the Agreement, that Stone converted PAR funds and assets to his personal use, that Stone failed to use his best efforts to develop the Property as a source of income for PAR, that Stoney's had failed to pay fair-market rent, and that Stone had failed and refused to provide an accounting of PAR funds and assets despite repeated requests.

50.     As a result of settlement negotiations conducted by Magistrate Judge Gauvey on December 15, 2000, Nichols, Stone and Stoney's agreed to settle the lawsuit on the grounds, *inter alia*, that a new lease be executed between PAR and Stoney's with terms more favorable to PAR.

294386.1

8

51.     In January 2001, PAR and Stoney's executed a new lease, which included all of the terms of the lease made between Nichols and Stoney's on June 28, 1995, to the extent not inconsistent with the lease dated January 2001 ("Lease").

52.     The initial term of the Lease was from January 1, 2001 to October 31, 2001.

53.     The Lease established rent for the restaurant at $60,000 for the initial period, to be paid in monthly installments of $6,000.

54.     In addition to rent paid for the restaurant, the Lease required that Stoney's pay all rental income from the boat slips and residential property to PAR.

55.     The Lease also emphasized that Stoney's was to pay all septic charges for the Property.

56.     Notwithstanding the terms of the negotiated settlement agreement, and the terms of the Lease, Stone has continued to cause Stoney's to breach the lease with PAR by failing to pay PAR rent of $6,000 each month, improperly charging PAR for expenses attributable to the operation of Stoney's, which are not authorized by the Lease or other agreement to be charged to PAR, including, cleaning and maintenance of the restaurant facility, sewer pump-outs, electricity and other utility expenses, grounds maintenance for the property, remodeling, repairs and expansion costs, permit costs, and other expenses not chargeable to PAR or Nichols.

57.     Despite demands from Nichols that BIYC, as the General Partner, enforce the lease, it has failed to do so because BIYC is controlled by Stone, whose interest in Stoney's conflict with and are adverse to the interest of BIYC, PAR and Nichols.

58.     By letter dated September 14, 2007, Nichols, through counsel, advised Stone of his intent to seek legal redress to enforce his rights, and requested that Stone provide access to PAR business records.

9

294386.1

59.     Despite numerous follow-up requests, Stone provide only partial access to a minimal amount of PAR business records and has failed to take any action, individually or as the president of BIYC to enforce the Lease because Stone's interest conflict with and are adverse to the interest of BIYC, PAR and Nichols.

60.     There are no PAR bank accounts, trust accounts, or other financial institution accounts in PAR's name, or otherwise naming PAR as having a legal interest.

61.     PAR money and other assets are comingled with assets of Stone, Jeanne Stone, Stoney's and/or other entities that are unrelated to PAR.

62.     Stone has failed to obtain, carry and/or properly allocate insurance to protect the interest of Nichols and PAR.

63.     Stone has improperly allocated insurance proceeds received by Stone for claims made for damage to PAR property causing compensable injury to Nichols and PAR.

64.     There are no insurance policies naming PAR as an insured entity.

65.     Jeanne Stone, who has no legal interest in PAR, is and/or has been a named insured concerning PAR property.

66.     Leases concerning PAR property have been executed between Stone and the tenants, with no mention of PAR.

67.     Stoney's has failed to make monthly rent payments to PAR as required in the Lease.

68.     Stone has improperly and fraudulently recorded, or caused to be recorded, contributions to his PAR capital account.

69.     Based on Stone's practical and actual, unilateral control over the business of PAR, his competing, conflicting and adverse interest as the sole tenant of PAR, and his refusal to

294386.1

cooperate with the reasonable requests of Nichols to provide access to PAR business records, it is clear that neither Stone nor BIYC will take any action on behalf of PAR to protect Nichols' or PAR's rights.

70.     As described above, Stone acted and continues to act in a manner contrary and adverse to the interest of Nichols and PAR in violation of his duty of loyalty and a duty of care to Nichols and PAR causing compensable injury to Nichols and PAR.

71.     As described above, Stone acted and continues to act in a manner contrary to and in violation of his duty and obligations of loyalty, care and good faith and fair dealing and has failed to account to Nichols and PAR for property, profit, and benefit derived by Stone and Stoney's in the conduct of PAR business, or derived from the use by Stone of PAR property, including the appropriation of PAR opportunities causing compensable injury to Nichols and PAR.

72.     As described above, Stone willfully engaged in self-dealing concerning PAR business as or on behalf of Stoney's, a party having an interest adverse to PAR, to the disadvantage of PAR, which constitutes intentional misconduct and/or gross negligence or reckless conduct in violation of his duty of care to PAR and Nichols.

## COUNT I – BREACH OF CONTRACT AGAINST STONE AND STONEY'S

73.     Plaintiff adopts by reference the allegations contained in paragraphs 1 through 72 of the Complaint with the same effect as if herein fully set forth.

74.     Stone, Stoney's and PAR entered into a valid lease agreement in January 2001, the initial of which was January 1, 2001 to October 31, 2001, whereby Stoney's and Stone as guarantor, agreed to pay $60,000 over the initial term of the Lease, in monthly installments of $6,000 and to pay all rental income from the residential units and marina slips.

294386.1

75.     Stoney's and Stone remain in possession of the Property subject to the Lease, and have been in possession continuously since the inception of the Lease, and by operation of law and the Lease, have remained obligated to pay $6,000 monthly and all rental income from the residential units and marina slips to PAR from January 2001 to the present.

76.     Stoney's and Stone have failed to pay the rent since January 2001 as required in the Lease, thereby materially breaching their contractual agreement with PAR.

77.     PAR has incurred substantial losses in the amount of $504,000 in lost rent from Stoney's from January 2001 to December 2007.

78.     Based on information concerning cash flows for the Property provided by Stone to an appraiser for Maryland Bank and Trust Company in November or December 2001, the three residential units and one office rental produced annual rental income of $40,800.  Because these rents were not paid to PAR in accordance with the Lease, PAR has incurred losses in the amount of $285,600 from the residential units from January 2001 through December 2007.

79.     Based on information concerning cash flows for the Property provided by Stone to an appraiser for Maryland Bank and Trust Company in November or December 2001, there are 63 marina slips, each of which can be rented for a sum of $100 per month.  Assuming a 70% occupancy rate, as was assumed by the appraiser, lost rents from the marina slips amount to $370,440 from January 2001 through December 2007.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount of $1,160,040, or for such other amount to be determined after a full accounting, plus interest, costs, attorney's fees and any and all other relief to which this Court finds him entitled.

294386.1

## COUNT II – UNJUST ENRICHMENT AGAINST STONE AND STONEY'S

80.     Plaintiff adopts by reference the allegations contained in paragraphs 1 through 79 of the Complaint with the same effect as if herein fully set forth.

81.     To the extent that the Lease is determined not to control the rights and obligations of the parties, Stone and Stoney's are liable to Plaintiff for unjust enrichment because they knowingly received and accepted the benefit of the use of PAR property while generating profit for themselves while failing to pay monthly rent owed to PAR and/or deducting expenses which were associated with and properly allocated to the operation of Stoney's business.

82.     Having specifically agreed, in settlement of a previous lawsuit, not to charge or cause Stoney's to charge improper expenses to PAR, Stone and Stoney's knew and appreciated that not paying rent or improper charging of expenses was a benefit to which they were not otherwise entitled and that Stone and Stoney's were receiving a benefit by reason of an infringement of PAR's interest, or through loss suffered by PAR.

83.     Under the circumstance described above, it is inequitable to allow Stone and Stoney's to retain such benefit and they owe restitution to Nichols and PAR in the manner and amount necessary to prevent unjust enrichment.

WHEREFORE, Plaintiff demands judgment against Defendants for lost rent in the amount of $1,160,040, or for such other amount to be determined after a full accounting, plus interest, costs, attorney's fees and any and all other relief to which this Court finds him entitled.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST STONE AND BIYC

84.     Plaintiff adopts by reference the allegations contained in paragraphs 1 through 83 of the Complaint with the same effect as if herein fully set forth.

13

85.     Stoney's and PAR entered into a Lease agreement whereby in exchange for rent, Stoney's was permitted to occupy land owned by PAR.

86.     Notwithstanding his knowledge of the Lease through his control over Stoney's and as President of BIYC, Stone intentionally, improperly and without legal justification and with malice and improper motive to injure PAR and Nichols, caused Stoney's to breach the Lease by not paying rent and/or deducting improper expenses from rent owed to PAR.

87.     As a result of Stone's and/or BIYC's malicious and intentional misconduct, PAR and Nichols were improperly deprived of revenues and suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount of $1,160,040 in compensatory damages, $1,000,000 in punitive damages, plus interest, costs, attorney's fees and any and all other relief to which this Court finds him entitled.

## COUNT IV – TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE AGAINST STONE AND BIYC

88.     Plaintiff adopts by reference the allegations contained in paragraphs 1 through 87 of the Complaint with the same effect as if herein fully set forth.

89.     Stoney's and PAR entered into a Lease agreement whereby in exchange for rent, Stoney's was permitted to occupy land owned by PAR.

90.     Notwithstanding his knowledge of the Lease through his control over Stoney's and as President of BIYC, Stone intentionally, improperly and without legal justification and with malice and improper motive to injure PAR and Nichols, caused Stoney's to breach the Lease by not paying rent and or deducting improper expenses from rent owed to PAR.

91.     As a result of Stone's and/or BIYC's malicious and intentional misconduct, PAR and Nichols were improperly deprived of revenues and suffered damages.

14

294386.1

WHEREFORE, Plaintiff demands judgment against Defendants in the amount of $1,160,040 in compensatory damages, $1,000,000 in punitive damages, plus interest, costs, attorney's fees and any and all other relief to which this Court finds him entitled.

## COUNT V – BREACH OF FIDUCIARY DUTY AGAINST STONE AND BIYC

92.    Plaintiff adopts by reference the allegations contained in paragraphs 1 through 91 of the Complaint with the same effect as if herein fully set forth.

93.    As partners with Nichols in a Limited Partnership, Stone and BIYC owed Nichols and PAR fiduciary duties of loyalty, care and an obligation of good faith and fair dealing.

94.    Stone controlled Stoney's, a tenant of PAR, and Stone controlled BIYC, the General Partner, which was charged with operating the partnership to the benefit of the partners.

95.    Stone and BIYC breached their duty by representing both PAR and Stoney's at the same time, causing PAR to enter into agreements with Stoney's that were unfair to PAR, failing to protect the interest of PAR by failing to properly obtain adequate insurance for PAR property and/or improperly allocating insurance proceeds received by Stone for claims made for damage to PAR property, failing to negotiate and enforce a fair lease arrangement with Stoney's, failing to use their best efforts, or even reasonable efforts to rent marina slips, and abusing their fiduciary positions to intentionally, or recklessly misdirect PAR assets and money to Stoney's.

96.    Stone's and BIYC's misconduct in breaching their fiduciary duty was done with malice and caused damage to Nichols and PAR.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount of $3,000,000 in compensatory damages, $3,000,000 in punitive damages, plus interest, costs, attorney's fees and any and all other relief to which this Court finds him entitled.

294386.1

## COUNT VI – INTENTIONAL MISREPRESENTATION AGAINST STONE, BIYC, AND JEANNE STONE

97.     Plaintiff adopts by reference the allegations contained in paragraphs 1 through 96 of the Complaint with the same effect as if herein fully set forth.

98.     Stone, Jeanne Stone and BIYC did engage in intentional misrepresentation when they knowingly, or with reckless indifference to the truth, with intent to defraud Nichols and PAR, falsely represented to Nichols that adequate insurance policies were in place to protect PAR as required by the Agreement and duties that Stone assumed on behalf of PAR.

99.     Stone and BIYC did engage in intentional misrepresentation when he knowingly, or with reckless indifference to the truth, with intent to defraud Nichols and PAR, falsely represented to Nichols that proceeds from insurance claims on policies covering PAR property were properly allocated to PAR.

100.    Stone did engage in intentional misrepresentation when he knowingly, or with reckless indifference to the truth, with intent to defraud Nichols, falsely represented to Nichols that repair and renovation costs were properly allocated in accordance with the Lease and the best interest of PAR, and/or that expenses and other items Stone caused Stoney's to charge to PAR or deduct from rent were proper and authorized by the Lease.

101.    Stone did engage in intentional misrepresentation when he knowingly, or with reckless indifference to the truth, with intent to defraud Nichols, falsely represented to Nichols that proper insurance policies, financial accounts, trust accounts or other similar accounts, which were free from comingling with Stoney's, Stone's or other third-party assets, or other financial irregularities, were maintained on behalf of PAR.

16

102.   Nichols had a right to and did rely on such misrepresentation based on the fiduciary duties owed by Stone and BIYC to Nichols.

103.   Nichols and PAR have suffered compensable injury resulting from their reliance on the intentional misrepresentation.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount of $3,000,000 in compensatory damages, $3,000,000 in punitive damages, plus interest, costs, attorney's fees and any and all other relief to which this Court finds him entitled.

## COUNT VII – CONSTRUCTIVE FRAUD AGAINST STONE AND BIYC

104.   Plaintiff adopts by reference the allegations contained in paragraphs 1 through 103 of the Complaint with the same effect as if herein fully set forth.

105.   Stone and BIYC have at all relevant times had responsibility and control of the business of PAR.

106.   By virtue of their positions as partners with Nichols, Stone and BIYC owed a fiduciary duty to Nichols and Nichols reposed trust and confidence in Stone and BIYC, who had control over all aspects of PAR business.

107.   Among the fiduciary duties owed by Stone and BIYC to Nichols was the duty to properly supervise and manage the partnership.

108.   Stone and BIYC owed the fiduciary duty to prevent Stoney's from, among other things, breaching the Lease with PAR, from diverting PAR funds and other assets to Stoney's, from making improper deductions from rents owed to PAR, from failing to pay monthly rent to PAR and ensuring PAR assets were properly insured and protected from risk and otherwise using their best or reasonable efforts on behalf of PAR to generate revenue for the benefit of PAR.

17

109.    Stone and BIYC breached their fiduciary duty to Nichols and PAR intentionally, with malice, and/or with reckless disregard for Nichols' and PAR's rights by ignoring the operation of PAR, failing to collect proper rent, and/or failing to prevent Stoney's and Stone from diverting PAR funds and assets, or otherwise acting willfully and contrary to the best interest of PAR.

110.    As a result of the breach of Stone's and BIYC's fiduciary duty, Nichols and PAR suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount of $3,000,000 in compensatory damages, $3,000,000 in punitive damages, plus interest, costs, attorney's fees and any and all other relief to which this Court finds him entitled.

## COUNT VIII – FRAUDULENT CONCEALMENT AGAINST STONE AND BIYC

111.    Plaintiff adopts by reference the allegations contained in paragraphs 1 through 110 of the Complaint with the same effect as if herein fully set forth.

112.    Acting as a General Partner of PAR and/or Limited Partner of PAR, with the special relationship of trust and confidence reposed in him, Stone acting as President of BIYC and or as a Limited Partner of PAR, had a duty to inform Plaintiff of all material facts.

113.    Despite exercising reasonable diligence, Plaintiff could not discover and Stone and BIYC prevented him from discovering Defendants' self-dealing schemes described herein, and thus Nichols was justified in relying on information provide to him by Stone and BIYC.

114.    When the Plaintiff raised concerns about his partnership interests and the failure of PAR to make adequate distributions, Stone and BIYC actively concealed the truth with half-truths, false and misleading statements, and omissions. Stone and BIYC continually attributed the failure of PAR to make adequate distributions to, *inter alia,* market conditions, such as less

18

than expected occupancy and more than expected expenses.  By so doing, Stone and BIYC

obscured the truth from Plaintiff, and deterred any meaningful inquiry or investigation by

Plaintiff that would have disclosed their self-dealing and allowed him to make appropriate

investment decisions.

115.    Stone and BIYC knew, of course, that increasing fees, improperly allocating

renovation costs and improperly charging expenses properly associated with Stoney's business to

PAR would affected the ability of PAR to make distributions to the Limited Partners, artificially

increase Stone's capital account and allow Stoney's to profit unfairly using PAR assets.

116.    Defendants actively concealed these material facts from the Plaintiff despite their

fiduciary duties and contractual promises, and did not fully disclose this critical information in

reports to, and other communications with Plaintiff.

117.    Stone and BIYC had sole knowledge of, or access to, material facts concerning,

*inter alia:* (1) the adverse effect of expense charges on PAR's ability to make distributions to the

Limited Partners; (2) the diminution of available cash flow by excessive operational costs

improperly passed on to PAR; and; (3) failure of Stone and BIYC to take commercially

reasonable steps to remain competitive by seeking more favorable lease arrangements and

improving occupancy levels on the property, including the marina slips.  Stone and BIYC knew

that Plaintiff had no access, or prevented Plaintiff access to the foregoing information and

therefore could not evaluate the accuracy of the projected distributions and other material facts in

making his decision to pursue his options and rights under the limited partnership.  Stone and

BIYC intentionally kept the Limited Partners uninformed of these facts and capitalized on their

sole possession of the material facts by providing Plaintiff with false and misleading information

regarding the true reasons for the inability of PAR to make adequate cash distributions.

19

294386.1

118.    Stone and BIYC intentionally concealed material information from Plaintiff, without legal justification or excuse, with the deliberate purpose of increasing their own profits at the expense of, and with intent to deceive PAR and Nichols.

119.    By fraudulently concealing material information from the Limited Partners in violation of a duty to do so, Stone and BIYC directly damaged the Limited Partners and PAR and, in turn, Plaintiff, by failing to make adequate cash distributions since at least 2002, by diminishing PAR assets, and causing the concomitant loss of value of PAR and consequential damages.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount of $3,000,000 in compensatory damages, $3,000,000 in punitive damages, plus interest, costs, attorney's fees and any and all other relief to which this Court finds him entitled.

## COUNT IX – PRELIMINARY AND PERMANENT INJUNCTION AGAINST STONE

120.    Plaintiff adopts by reference the allegations contained in paragraphs 1 through 119 of the Complaint with the same effect as if herein fully set forth.

121.    Nichols seeks preliminary and permanent injunctive relief to include removing and permanently enjoining Stone from participating in the management of PAR in any capacity.

122.    Notwithstanding the provisions of the Agreement which require that management of PAR business lie solely with the General Partner and that no Limited Partner shall take part in the control of the business of PAR, and that the General Partner is obligated to operate PAR for the benefit of all of the partners, as described above, Stone did improperly control the business of PAR and has done so to the disadvantage of, and has caused compensable injury to Nichols and PAR.

294386.1

123.    Stone and Stoney's entered into contracts and agreements with PAR for the benefit of Nichols and PAR.

124.    In reliance on these contracts, Nichols made a significant financial investment in the operations of PAR.

125.    Stone and Stoney's continue to breach these contracts and agreements and Stone continues to breach his duties as a PAR partner, despite over ten years of demands by Nichols that Stone comply, and a federal court-negotiated settlement of a lawsuit to enforce such contracts and agreements.

126.    Nichols' investment continues to be depleted as a result of Stone's and Stoney's wrongful acts because Nichols is forced to continually incur expenses to defend and enforce his rights.

127.    Unless Stone is restrained by this Court, Nichols will suffer substantial and irreparable harm because, as described above, without a Court order, Stone will continue to breach, or cause entities he controls to breach his duties as a partner, continue to defraud Nichols, continue to cause Stoney's to breach its lease, all resulting in Nichols having to file a never-ending parade of lawsuits to enforce his rights and protect his investment and interests, which may ultimately be depleted as a result of such efforts.

128.    There exists a strong likelihood that Nichols will succeed on the merits of his claim as the agreements and law governing the rights and obligations of the parties are clear.

129.    The benefits to Nichols in obtaining injunctive relief outweigh the potential harm, which Stone or Stoney's may incur if this Court grants the requested injunctive relief.

130.    The public interest of enforcing legally binding contracts is best served by granting this injunction.

21

294386.1

## COUNT X - ACCOUNTING

131.   Plaintiff adopts by reference the allegations contained in paragraphs 1 through 130 of the Complaint with the same effect as if herein fully set forth.

132.   Stone and BIYC operated the business of PAR and Stoney's as if they were one, comingling funds, business records and property to such an extent that the records for both businesses are intertwined and complicated.

133.   As partners with Nichols, Stone and BIYC occupied positions of trust and confidence with PAR and Nichols, which gives rise to a fiduciary obligation to fully and properly render an accurate accounting of PAR business.

134.   Pursuant to Stone's and Stoney's contractual obligations and guarantees, and as a matter of law, Stone and Stoney's have been, at all relevant times, under a legal and equitable duty to account for monies due to Nichols and PAR.

135.   Nichols has repeatedly requested that Stone and/or BIYC provide access to the business records of PAR.

136.   Stone and/or BIYC have failed to provide complete access to PAR records to which Nichols is entitled, and based on the records that have been provided, Nichols believes that Stone and Stoney's have illegally profited as a result of their misconduct and/or recklessness, breach of fiduciary duty and breaches of the Lease, Contract and Agreement.

137.   Nichols is fearful that, unless enjoined by an order of this Court, Stone, Stoney's, and/or BIYC may attempt to change, alter or destroy business and other records of PAR business and also Stoney's financial records insofar as they may apply to the subject matter of this lawsuit.

22

294386.1

WHEREFORE, Plaintiff requests that Stone, Stoney's and BIYC be ordered by a decree of this Court to fully and completely account for all sums due Nichols and PAR, such accounting to include a complete, court-supervised, impartial examination of the business records of Stoney's and PAR from January 2001 through December 2007, that Nichols have a judgment against Stone, Stoney's and/or BIYC in the sum found to be due to Nichols and PAR on such accounting, with interest together with costs and disbursements of this action, and that Nichols have such other and further relief as may be just and equitable.

WHEREFORE, Nichols demands judgment against Defendants as outlined above and respectfully prays that this Court grant the following relief:

a.      enter an order granting preliminary and permanent injunctive relief which enjoins Stone and Stoney's, as well as any entity that they have formed or may form, from breaching the Lease between Stoney's and PAR;

b.      enter an order that Stone be enjoined from taking part in any control of the business of PAR in any capacity, either directly or indirectly as a director, officer, agent, or employee of another entity, including as an officer of the General Partner of PAR;

c.      enter an order compelling Stone and Stoney's to fully and completely account to and pay Nichols and PAR for all improperly diverted rents, improperly allocated insurance proceeds, and/or improperly diverted profits, revenues, and/or other benefits belonging to PAR;

d.      enter an order that Stone be enjoined from withholding from Nichols, or any other partner of PAR, access to all PAR business records;

e.      enter an order awarding Nichols compensatory and punitive damages as outlined in the above Counts;

f.      enter an order awarding to Nichols his attorneys' fees and costs; and

294386.1

g.    grant such further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Plaintiff demands a trial by jury on all issues so triable.

VERIFIED,

I solemnly affirm under the penalties of perjury that the contents of the foregoing Complaint are true to the best of my knowledge, information and belief.

_____
Robert L. Nichols
Plaintiff

RESPECTFULLY SUBMITTED,

CONSTANGY, BROOKS & SMITH, L.L.C.

Dated: December 20, 2007          By: _____
                                   Robert P. Floyd, III, Maryland Fed. Bar No. 13594
                                   4100 Monument Corner Drive, Suite 520
                                   Fairfax, Virginia 22030
                                   (571) 522-6100 – telephone
                                   (571) 522-6101 - facsimile

                                   ATTORNEYS FOR PLAINTIFF

294386.1